UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MELISSA IRENE MOSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-00721 |
| ) | Judge Haynes/Brown |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**To: The Honorable William J. Haynes, Jr., Senior United States District Judge.**

## REPORT AND RECOMMENDATION

This action was brought under 42 U.S.C. §§ 405(g) and 1383(c) for judicial review of the final decision of the Social Security Administration (SSA) through its Commissioner, denying plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 416(i) and 423(d). For the reasons explained below, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 12) be **DENIED**, and the Commissioner's decision **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed for DIB on July 16, 2012 (Doc. 10, pp. 74, 86-87, 99, 261), alleging a disability onset date of September 17, 2010 (Doc. 10, pp. 75, 88, 162, 224, 261, 271).[1] Plaintiff claimed she was unable to work because of a herniated disc with nerve impingement, heel spurs, back pain, muscle spasms, thyroid problems, anxiety and depression. (Doc. 10, pp. 74-75, 87, 113, 228)

---

[1] References to page numbers in the administrative record (Doc. 10) are to the page numbers that appear in bold in the lower right corner of each page.

Plaintiff's application for benefits was denied initially on January 2, 2013, and upon reconsideration on February 15, 2013. (Doc. 10, pp. 74-99) On April 14, 2012, plaintiff requested a hearing before an administrative law judge (ALJ). (Doc. 10, pp. 118-20) A hearing was held in Nashville on February 6, 2014 before ALJ J. Dennis Reap. (Doc. 10, pp. 33-71) The ALJ entered an unfavorable decision on March 27, 2014 (Doc. 10, pp. 11-32), after which plaintiff filed a request with the Appeals Council on May 5, 2014 to review the ALJ's decision (Doc. 10, pp. 7-10). The Appeals Council denied plaintiff's request on April 24, 2015 (Doc. 10, pp. 1-6), whereupon the ALJ's decision became the final decision of the Commissioner.

Plaintiff brought this action through counsel on June 26, 2015 (Doc. 1), following which she filed a motion for judgment on the administrative record on September 16, 2015 (Doc. 12). The Commissioner responded on October 4, 2015 (Doc. 14), and plaintiff replied on October 12, 2015 (Doc. 15). This matter is now properly before the court.

## II. EVIDENCE[2]

Dr. Thurman Pedigo, M.D., examined plaintiff consultively on May 4, 2011. (Doc. 10, pp. 611-22) Plaintiff was 6 mos. pregnant at the time. (Doc. 10, p. 613) Dr. Pedigo made the following neurological observations in his general examination:

> CN II-XII[3] and cerebellar function grossly intact. Bilateral Tinel's[4]

---

[2] The excerpts of the administrative record referred to below are those necessary to respond to plaintiff's motion for judgment on the administrative record. The remainder of the record is incorporated herein by reference.

[3] CN II-XII – second through twelfth cranial nerves. *Dorland's Illustrated Medical Dictionary* 1244 (32nd ed. 2012).

[4] Tinel sign – "a tingling sensation in the distal ['remote, farther from any point of reference'] end of a limb when percussion is made over the site of a divided nerve." A positive Tinel "indicates a partial lesion or the beginning regeneration of the nerve." *Dorland's* at pp. 55, 1716.

2

and Phalen's[5] were negative. Rhomberg [*sic*],[6] Hoffman,[7] Babinski[8] negative. DTRs 2+[9] all extremities. No focal sensory deficits. Strength is 5/5[10] in all extremities.

(Doc. 10, p. 616)

Dr. Pedigo's orthopedic assessment was that plaintiff could perform the following basic tasks: pick up a coin, make a fist, button clothing, tandem walk, stand on her left and right leg, squat, arise from squatting, dress and undress, arise from a chair, get onto and off of the examining table "without difficulty." (Doc. 10, p. 616)(italics omitted) Plaintiff's posture, gait, and ability to walk on her toes and heels were normal as well. (Doc. 10, p. 616) Plaintiff's only orthopedic limitation was her ability to bend, which was "limited due to pregnancy." (Doc. 10, p. 616)(italics omitted)

Plaintiff's shoulder and elbow range of motion (ROM) were normal; however, her right and left wrist dorsal ROM were 45 and 30 degs. respectively, where normal is 60 degs., but her palmar ROM was normal in both wrists.[11] (Doc. 10, pp. 610, 617) Plaintiff's cervical spine ROM was

---

[5] Phalen sign – "appearance of numbness or paresthesias ['an abnormal touch sensation'] within 30 to 60 seconds during the . . . test . . . [is] . . . a positive sign for carpal tunnel syndrome." *Dorland's* at pp. 1383, 1714.

[6] Romberg sign – "swaying of the body or falling when standing with the feet close together and the eyes closed; the result of loss of joint position sense, seen in tabes dorsalis ['slowly progressing degenerative of the posterior colums and posterior roots and ganglia of the spinal cord'] and other diseases affecting the posterior columns" of the spine. *Dorland's* at pp. 1715, 1866.

[7] Hoffman phenomenon – "increased excitability to electrical stimulation in the sensory nerves . . . ." *Dorland's* at p. 1430. A positive Hoffman test is an indicator of possible spinal cord compression.

[8] Babinski sign – "loss or lessening of the Achilles tendon reflex in sciatica . . . ." *Dorland's* at p. 1708. The Babinski test is used to assess possible upper motor neuron dysfunction.

[9] DTR (deep tendon response) – A DTR of 2+ is normal. *Http://stanfordmedicine25.stanford.edu/the25/tendon.html*.

[10] 5/5 is normal muscle strength. *Http://www.neuroexam.com.neuroexam/content.php?p=29.*

[11] Dorsal – "more toward the back surface . . . ." *Dorland's* at p. 563. Palmar – "pertaining to the palm." *Dorland's* at p. 1365.

normal, but her right forward, lateral, and extension lumbar flexion were 30 degs., 5 degs., and 20 degs. respectively, whereas left lateral lumbar ROM was normal except for lateral flexion which was 10 degs.[12] (Doc. 10, p. 618) Bilateral hip ROM was 100 degs. flexion, 30 degs. extension, 40 degs. abduction, 20 degs. adduction, 40 degs. internal rotation, and 50 degs. external rotation.[13] (Doc. 10, p. 618) Knee ROM was 130 degs. right flexion, and 100 degs. left flexion.[14] (Doc. 10, p. 618) Drawer and McMurray tests[15] were normal as was the ROM of her ankles. (Doc. 10, p. 618)

Dr. Pedigo completed a physical functional capacity assessment pursuant to his examination. (Doc. 10, pp. 620-21) Dr. Pedigo determined that plaintiff had the following exertional limitations: 1) lift/carry up to 10 lbs. frequently and 20 lbs. occasionally; 2) stand and/or walk less than 2 hrs. in an 8-hr. workday; 3) sit less than 6 hrs. in an 8-hr. workday; 4) unlimited ability to push/pull hand and/or foot controls within the limitations of lifting/carrying. (Doc. 10, p. 620) Dr. Pedigo's assessment of plaintiff's <u>exertional</u> limitations were "due to pregnancy." (Doc. 10, p. 619) Dr. Pedigo did not establish any postural, manipulative, visual, communicative, or environmental limitations. (Doc. 10, pp. 620-21)

Plaintiff underwent a MRI for chronic back pain on May 24, 2012. (Doc. 10, pp. 801-02) The impression recorded in the MRI report was as follows: "Mild lumbar spine spondylosis with mild degenerative disc disease and L5-S1 surgical change. Mild degenerative L5-S neural foraminal stenosis." (Doc. 10, p. 802)

---

[12] Normal ROM of the dorsolumbar spine is 90 degs. flexion, 25 degs. extension, right and left lateral flexion. (Doc. 10, p. 609)

[13] Normal hip ROM is 120 degs. flexion, 30 degs. extension, 40 degs. abduction, 20 degs. adduction, 40 degs. internal rotation, and 50 degs. external rotation. (Doc. 10, p. 610)

[14] Normal knee ROM is 130 degs. flexion. (Doc. 10, p. 610)

[15] Drawer test – a test used to assesses the integrity of the cruciate ligaments of the knee. *Dorland's* at 1889. McMurray test – a test used to assess the integrity of the meniscus. *Http://www.physio-pedia.com/McMurrays_Test.*

Dr. Roy Johnson, M.D., examined plaintiff consultively on December 14, 2012. (Doc. 10, pp. 810-12) Dr. Johnson's review of the medical records included the May 24, 2014 MRI report discussed above. (Doc. 10, p. 810) Dr. Johnson noted in his examination that plaintiff was in no acute distress, she was able to get on and off the examining table without assistance, her visual acuity was 20/20 in each eye, and 20/15 together. (Doc. 10, p. 811) Dr. Johnson reported that plaintiff's spinal ROM was 40 degs. flexion, 20 degs. extension, 20 degs. right and left flexion bilaterally, she exhibited paraspinal tenderness to palpation at L4-L5, but both seated and supine straight leg raises were negative.[16] (Doc. 10, p. 812) Dr. Johnson noted further that plaintiff had full bilateral ROM of the shoulders, elbows, wrists, hips, knees, and ankles, her gait and station were "unremarkable," she was able to "squat and rise half a distance and balance on each foot," her grip strength was 5/5, her dexterity was intact, her DTRs were intact, her cranial nerves II-XII were intact, and her Romberg test was negative. (Doc. 10, p. 812) Dr. Johnson assessed plaintiff with the ability to lift 15 lbs. occasionally, stand and/or walk for "at least two hours with normal breaks," and "no sitting restrictions at this time." (Doc. 10, p. 812)

Dr. Avis Diane Turner examined plaintiff on February 4, 2013 for chronic back pain."[17] (Doc. 10, pp. 961-63) Dr. Turner's impression was as follows: "Mild lumbar spine spondylosis with mild degenerative disc disease and L5-S1 surgical change. Mild degenerative L5-S1 neural foraminal stenosis." (Doc. 10, p. 962) Dr. Turner's impression was based on the "[m]ost recent MRI," *i.e.*, the one made in May 2012 discussed above. Dr. Turner also noted that "[p]atient [complains of] weakness of right leg; leg gives out on her. [S]he states that her leg locks on her

---

[16] Straight leg raise – When "the symptomatic leg is lifted with the knee fully extended pain in the lower extremity between 30 and 90 degrees of elevation indicates lumbar radiculopathy ['disease of the lumbar nerve roots'] . . . ." *Dorland's Illustrated Medical Dictionary* 1571, 1900 (32nd ed. 2012).

[17] Plaintiff testified at the hearing that he had seen Dr. Turner "for the last year." (Doc. 10, p. 40) Given that the hearing was February 6, 2014 that would make this clinical visit his first with Dr. Turner.

5

from time to time [and] pain radiates from the back and down the right leg." (Doc. 10, p. 962) Dr. Turner ordered a consult for a cane. (Doc. 10, p. 961) The consult was completed on February 11, 2013, following which plaintiff was issued a single point cane. (Doc. 10, p. 895) The clinical note describes plaintiff arriving at the consult "fully ambulatory." (Doc. 10, p. 895)

An in-person VA examination in connection with a disability benefits questionnaire was completed on August 8, 2013 regarding plaintiff's thoracolumbar spine. (Doc. 10, pp. 867-75) Initial forward flexion ROM was 80 degs. with a norm noted of 90 degs., 25 degs. extension with a norm of 30 degs., 25 degs. right and left lateral flexion with a norm of 25 degs., 30 degs. right and left right lateral rotation with a norm of 30 degs. (Doc. 10, pp. 869-70) Plaintiff evinced pain at the limits noted above for forward flexion and extension, but did not exhibit any pain in lateral flexion or rotation. (Doc. 10, pp. 869-70) ROM was the same upon "repetitive use testing with 3 repetitions." (Doc. 10, pp. 870-71) The examiner's assessment of plaintiff's functional loss and/or functional impairment of the spine was "[l]ess movement than normal," and "[p]ain on movement." (Doc. 10, p. 871)

The August 8th disability benefits questionnaire also revealed that plaintiff had no localized tenderness or pain to palpation of the joints/soft tissue, "no guarding or muscle spasm," normal strength in hip flexion, knee extension, ankle plantar flexion, ankle dorsiflexion, and great toe extension, she had no muscle atrophy, DTRs were normal in her knees and ankles, her sensation to light touch was normal at upper anterior thigh, the thigh/knee, the lower leg/ankle, and in her feet and toes. (Doc. 10, pp. 871-73) Plaintiff's straight leg raising tests were normal and, although she reported radiculopathy in her lower extremities, she reported no constant pain, but did present with mild intermittent pain, paresthesias and/or dysesthesias,[18] and numbness in her right lower extremity.

---

[18] Dysesthesia – "distortion of any sense, especially that of touch." *Dorland's* at 577.

(Doc. 10, p. 873) Plaintiff had no other neurologic abnormalities, she did not have intervertebral disc syndrome (IVDS), and did not "use any assistive device as a normal mode of locomotion." (Doc. 10, p. 874) The report noted that there were "no other pertinent physical findings, complications, conditions, signs or symptoms," and that plaintiff's spinal condition had only a single impact on her ability to work: she was "unable to perform heavy lifting." (Doc. 10, pp. 874-75)

The last clinical record attributable to Dr. Turner is dated August 24, 2013. (Doc. 10, pp. 823-27) Dr. Turner's impression of plaintiff's back related conditions were based on a "MRI last year [that] revealed . . . [m]ild lumbar spine spondylosis with mild degenerative disc disease and L5-S1 surgical change. Mild degenerative L5-S-1 neural foraminal stenosis." (Doc. 10, p. 823) Dr. Turner noted that plaintiff's previous sciatica complaint was now "intermittent," she had "been able to lose weight with exercise and her bmi (body mass index) had decreased from 34 to 31." (Doc. 10, pp. 823-24) Dr. Turner also noted that plaintiff exhibited "5/5 power bilaterally" in her extremities. (Doc. 10, p. 824)

Dr. Turner completed a document captioned, "BACK (THORACOLUMBAR SPINE) CONDITIONS DISABILITY BENEFITS QUESTIONNAIRE" ("back questionnaire") on November 27, 2013. (Doc. 10, pp. 1042-47) Dr. Turner reported that plaintiff's thoracolumbar spine ROM was limited to 55 degs. forward flexion, 25 degs. extension, 25 degs. right and left lateral flexion, and 20 degs. right and left lateral rotation. (Doc. 10, pp. 1042-43) Plaintiff claimed that she experienced forward flexion pain merely by standing. (Doc. 10, p. 1042) Plaintiff claimed pain onset at 15 degs. extension, 10 degs. right and left lateral flexion, and right lateral rotation, but no left lateral rotation pain. (Doc. 10, pp. 1042-43) The results of repetitive-use testing with 3 repetitions revealed a ROM of 65 degs. forward flexion, 25 degs. extension, 25 degs. right and left lateral flexion, and 30 degs. right and left lateral rotation. (Doc. 10, p. 1043) Dr. Turner determined

that plaintiff had additional ROM limitations following repetitive-use testing, *i.e.*, she cannot "squat, bend or stand for extended periods of time" due to less movant than normal, weakened movement, excess "fatigability," pain with movement, instability of station, disturbance of locomotion, and right leg weakness requiring the use of a cane when walking. (Doc. 10, p. 1043) Dr. Turner also noted that plaintiff exhibited unspecified tenderness and/or pain to palpation over the right sacroiliac (SI) joint, and "slight" scoliosis of the spine. (Doc. 10, p. 1044) The back questionnaire reflects generally normal strength in hip flexion, knee extension, ankle plantar flexion, ankle dorsiflexion, with somewhat reduced strength in right plantar flexion and ankle dorsiflexion,[19] but no muscle atrophy. Plaintiff exhibited essentially normal DTRs, and normal sensation to light touch. (Doc. 10, pp. 1044-45)

Dr. Turner noted that plaintiff exhibited positive bilateral straight-leg raises (Doc. 10, p. 1045), and radicular pain or other signs/symptoms related thereto, *i.e.*, constant severe/intermittent pain in her right lower extremity, severe paresthesias and/or dysesthesia in her right lower extremity, and moderate numbness in both lower extremities. (Doc. 10, p. 1045) Dr. Turner noted that the foregoing symptoms involved the right sciatic nerve, and that the associated radiculopathy was severe. (Doc. 10, p. 1045) Dr. Turner noted further that the pain radiated from plaintiff's right buttock to the outside of her right calf, that plaintiff "occasionally ha[d] to use a cane 3-5x/month,"[20] that she experienced parethesia/dysesthesia "2-3x/month," that her "[r]ight leg gives away while walking 'pretty often' weekly – for instance while shopping," that plaintiff had IVDS, and that she had "2-3 episodes" of IVDS in "the last 12 months" that lasted 2 days (Doc. 10, pp. 1045-46). Dr.

---

[19] It is difficult to determine plaintiff's actual strength rating, because Dr. Turner made conflicting entries in seven of the ten areas of assessment.

[20] Dr. Turner reports later in the back questionnaire that plaintiff used a cane "2-3 x/month." (Doc. 10, p. 1046)

Turner noted further that plaintiff reported "muscle spasm[s] after each day working with her busy 2 year old and standing doing ADLs such as loading the dishwasher." (Doc. 10, p. 1046)

The diagnosis on which Dr. Turner based her observations in the back questionnaire was "L5-S1 herniation [no change] discectomy and laminectomy." (Doc. 10, p. 1042) More particularly, Dr. Turner based her opinions on a May 24, 2012 MRI which she characterized as follows: "L5-S1 small right central disc bulge with focal bony end plate hypertrophy. Adjacent right anterior epidural fibrosis lamenectomy (L-5-S-1 surgical change). Mild degenerative L5-S-1 neural foraminal stenosis (5/24/12)." (Doc. 10, p. 1047)(unnecessary/improper capitalization omitted) Dr. Turner checked the box corresponding to "NO" in response to the question: "Are there any other significant diagnostic test findings and/or results." (Doc. 10, p. 1047)(unnecessary capitalization omitted)

Dr. Turner completed a form captioned, "MEDICAL OPINION RE: ABILITY TO DO WORK-RELATED ACTIVITIES (PHYSICAL)" on February 18, 2014 ("medical opinion"). (Doc. 10, pp. 1048-50) Dr. Turner assessed plaintiff with the following limitations in an 8-hr. workday: lift and carry 15-20 lbs. occasionally, lift and carry 5-10 lbs. frequently, stand, walk, and sit a maximum of 15 mins. in an 8-hr. workday.[21] (Doc. 10, p. 1048) Dr. Turner opined that plaintiff was able to sit and/or stand only 15 mins. before having to change positions, "walk around" for 5-10 mins. every 15 mins., shift at will from sitting or standing/walking, and lie down at "unpredictable intervals" during an 8-hr. workday due to muscle spasms. (Doc. 10, p. 1048) Dr. Turner offered the following medical findings in support of the foregoing limitations: "Discketomy [*sic*] (Feb 2006)

---

[21] Dr. Turner made inconsistent entries pertaining to plaintiff's maximum ability to stand, walk, and sit during a normal 8-hr. workday. On the one hand, Dr. Turner marked the box corresponding to "less than 2 hrs." total in reference to these postural limitations, but then wrote and circled "15 minutes" immediately above the mark for "less than 2 hrs." The Magistrate Judge adopts the "15 minutes" limitation for the analysis that follows as it is more consistent with Dr. Turner's medical opinion.

[no change after] lamenectomy L5-S1 [with] re-herniation (Dec 2007) with radiculopathy & weakness & numbness on right lower extremity. She uses a cane." (Doc. 10, p. 1049)

Dr. Turner also assessed plaintiff with the ability to twist, crouch and climb stairs only occasionally, that she could never stoop, bend, or kneel, and that she was unable crawl, balance, or climb ladders because of her need for a cane. (Doc. 10, p. 1049) Dr. Turner concluded further that plaintiff was able to reach, handle, finger, peel, and push/pull with her hands only occasionally, and that she was vision impaired. (Doc. 10, p. 1049) As for environmental limitations, Dr. Turner opined that plaintiff had to avoid concentrated exposure to extreme cold, more than moderate exposure to fumes, odors, dust, gases, perfumes, solvents/cleaners, and chemicals, and all exposure to extreme heat, high humidity, and soldering fluxes. (Doc. 10, p. 1049) Dr. Turner opined that plaintiff's conditions/limitations would cause her to miss more than 4 days of work per month. (Doc. 10, p. 1050)

### III. The ALJ's Notice of Decision

Under the Act, a claimant is entitled to disability benefits if he can show his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.905. Corresponding regulations outline the five-step sequential process to determine whether an individual is "disabled" within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374-75 (6th Cir. 2014). While the claimant bears the burden of proof at steps one through four, the burden shifts to the Commissioner at step five to identify a significant number of jobs in the economy that accommodate the claimant's RFC and vocational profile. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

## IV. ANALYSIS

### A. Standard of Review

The district court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record, and whether the decision was made pursuant to proper legal standards. 42 U.S.C. § 405(g); *Gayheart*, 710 F.3d at 374. Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2003). The Commissioner's decision must stand if substantial evidence supports the conclusion reached, even if the evidence supports a different conclusion. *Gayheart*, 710 F.3d at 374. The ALJ determined that plaintiff was capable of performing the full range of sedentary work,[22] including prior relevant work as a receptionist.

### B. Claims of Error

#### 1. Whether the ALJ Erred in Not Giving Controlling Weight to Dr. Turner's Opinion
#### (Doc. 13, pp. 6-8)

Plaintiff advances three arguments in support of her first claim of error. Plaintiff argues first that the ALJ failed to give a good reason for giving "very little weight" to Dr. Turner's medical opinion. Plaintiff argues next that the ALJ erred in not giving controlling weight to Dr. Turner's opinion. Finally, plaintiff argues that the ALJ failed to consider her "use of a cane as medically necessary . . . ."

---

[22] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

Under the standard commonly called the "treating physician rule," the ALJ is required to give a treating source's opinion "controlling weight" if two conditions are met: the opinion "'is well-supported by medically acceptable clinical and laboratory diagnostic techniques,'" and the opinion "'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). The ALJ "is not bound by a treating source's opinions, especially when there is substantial medical evidence to the contrary." *Cutlip v. Sec'y of Health and Human Serv's*, 25 F.3d 284, 287 (6th Cir. 1994). That said, the ALJ is required to provide "'good reasons'" for discounting the weight given to a treating-source's opinion. *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)). These reasons must be "'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, 710 F.3d at 376 (quoting SSR 96–2p, 1996 WL 374188 at *5 (SSA)).

Turning to plaintiff's first argument, the ALJ's reason for not giving Dr. Turner's medical opinion controlling weight is quoted below in relevant part:

> . . . . Dr. Turner's opinion is given little weight because it is overly restrictive, unsupported by the diagnostic images, and inconsistent with h[er] own treatment notes. . . .

(Doc. 10, p. 24) The ALJ's reason quoted above constitutes good reason for not giving Dr. Turner's opinion controlling weight. The next question is whether the ALJ's reason is supported by the evidence, which question is the crux of plaintiff's second argument.

Dr. Turner's impression of plaintiff's alleged "chronic back pain" reported in her February 4, 2013 clinical record is a verbatim quote of the medical impression in the May 24, 2012 MRI report. Dr. Turner's impression of plaintiff's "chronic back pain" reported 6 mos. later in her August 24, 2013 clinical record also is a verbatim quote from the May 24, 2012 MRI report. All

12

three of these records, *i.e.*, the two clinical records 6 mos. apart and the MRI report, characterize plaintiff's spinal defects as small, mild, and not significant. In short, Dr. Turner's back questionnaire and medical opinion not only are inconsistent with her own February 4 and August 24, 2012 clinical records, they fly squarely in the face of the 2012 MRI report, the only objective medical evidence pertaining to plaintiff's chronic back pain complaint.

Apart from her February 4 and August 24, 2013 clinical records, there are no other clinical records attributable to Dr. Turner that address plaintiff's alleged chronic back pain between February 4, 2013 when she first treated plaintiff and November 27, 2013 when she completed the back questionnaire, or between November 27, 2013 and February 18, 2014 when Dr. Turner signed her medical opinion. In short, apart from the February 4 and August 24, 2013 clinical records in which Dr. Turner characterized plaintiff's chronic back pain as small, mild, and not significant, the remainder of the clinical records attributable to Dr. Turner are silent with respect to plaintiff's alleged chronic back pain.

There is only one other record during the period February 4, 2013 to February 18, 2014 that addresses plaintiff's alleged chronic back pain: the August 8, 2013 disability benefits questionnaire. A comparison of the back questionnaire and the August 8, 2013 disability benefits questionnaire examination reveals that the latter is at odds with the former – often considerably – in that the latter reflects greater spinal ROM on both initial measurement and repetitive-use testing, no additional limitations in ROM following repetitive-use testing, no loss or functional impairment due to repetitive-use testing apart from less movement than normal due to pain, no tenderness or pain on palpation, no guarding or muscle spasms, 5/5 strength in all extremities evaluated, negative bilateral straight leg raises, radicular pain assessed as none to mild, no additional signs of radiculopathy, no IVDS or incapacitating episodes due to IVDS in the last 12 mos., and no need of an assistive device

13

as a normal mode of locomotion. Dr. Turner's medical opinion also is at odds with the August 8, 2013 disability benefits questionnaire. Dr. Turner opined that plaintiff was disabled, whereas the August 8, 2013 disability benefits questionnaire noted only a single limitation on plaintiff's ability to work: plaintiff was "unable to perform heavy lifting."

Dr. Pedigo's May 4, 2011 full systems physical examination also is relevant to this argument. Although the ALJ gave Dr. Pedigo's report no weight because the exertional limitations assessed were due to plaintiff's pregnancy, and not her alleged chronic back pain, it is worth noting, that Dr. Pedigo's report was in conflict/inconsistent with Dr. Turner's medical opinion in several important ways. Although plaintiff was 6 mos. pregnant at the time of the examination, neurological examination of plaintiff's spine was normal/unremarkable, she was able to tandem walk, stand on her left and right leg, squat, and arise from a squat. Dr. Pedigo also assessed plaintiff with the ability to stand and/or walk up to 2 hrs. in an 8-hr. workday, sit up to 6 hrs. in an 8-hr. workday, and that she had unlimited ability to push/pull hand and/or foot controls. Dr. Pedigo's stand and/or walk and sit limitations are in sharp contrast with Dr. Turner's assessment that plaintiff was unable to stand or sit for more than 15 mins. in an 8-hr. workday.

Dr. Johnson's December 14, 2012 consultive examination also is relevant to this argument. Although Dr. Johnson reported reduced spinal ROM and tenderness to paraspinal palpation, her seated and supine straight leg raises were negative. The remainder of plaintiff's physical examination was normal, including upper and lower extremity ROM, gait and station, squatting, rising from a squat, balancing on each foot, grip, dexterity, DTRs, etc. Although Dr. Johnson concluded that plaintiff could lift marginally less than Dr. Turner's assessment of 15-20 lbs., *i.e.*, 15 lbs., he assessed plaintiff with the ability to stand and/or walk for at least two hrs. in an 8-hr. workday, and that she had no sitting limitations at the time of the examination. Dr. Johnson's stand

14

and/or walk and sit limitations again are in sharp contrast with Dr. Turner's assessment that plaintiff was unable to stand or sit for more than 15 mins. in an 8-hr. workday.

As shown above, Dr. Turner's back questionnaire and medical opinion are inconsistent with her own clinical records, the 2012 MRI report, the August 8, 2013 disability benefits questionnaire, and the reports of Drs. Pedigo and Johnson. In short, substantial evidence on the record supports the ALJ's decision not to give Dr. Turner's medical opinion controlling weight.

Finally, plaintiff argues that the ALJ erred in not considering her alleged need of a cane as medically necessary. (Doc. 13, p. 8) This argument is quoted below in its entirety.

> In addition, [plaintiff] was evaluated for a cane on February 11, 2013. Dr Turner noted on the Medical Source Statement that the Plaintiff uses the cane for assistance in ambulation. As recognized in SSR 96-9p, 'the occupational base for an individual who must use [an assistive] device for balance because of significant involvement of both lower extremities (e.g., because of neurological impairment) may be significantly eroded.' In the instant case, had the ALJ considered the use of a cane as medically necessary, the RFC finding and conclusion certainly could not stand.

(Doc. 13, p. 8)(internal references to the record omitted)

Plaintiff fails to support her third argument with any factual allegations. Although the record shows that plaintiff received a cane on February 11, 2013 pursuant to a consultation arising from her first visit with Dr. Turner, the record does not show, nor does plaintiff argue, that she actually requires the use of a cane, much less that she requires the use of a cane so frequently that it would significantly erode her ability to perform sedentary work, or how having to use a cane would cause her to miss up to 4 days of work a month. Indeed, the August 8th disability benefits questionnaire recorded that plaintiff did not require the use any assistive device as a normal mode of locomotion, and plaintiff testified at the hearing that she kept the cane in her car on a just-in-case basis. (Doc. 10, p. 55) Even assuming that plaintiff did need to use a cane occasionally, plaintiff fails to allege

15

and show that having to use a cane "2-3x/month" or "3-5x/month" – depending where in the back questionnaire one reads Dr. Turner's conflicting assessments – would significantly erode her ability to perform sedentary work, work "defined as . . . involving sitting," "lifting no more than 10 pounds at a time," "occasionally carrying articles like docket files . . . [and] . . . ledgers," with only a "certain amount of walking and standing." More particularly, plaintiff fails to allege and show how having to use a cane so infrequently would affect her ability work to perform her past relevant work as a receptionist, whose duties are described in the Dictionary of Occupational Titles (DOT) as noted in n. 23 below.[23]

As shown above, plaintiff's third argument is conclusory. The district court is not obligated on judicial review to supply factual allegations in support of claims where no facts are alleged. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)("[W]e decline to formulate arguments on [appellant's] behalf"). Consequently, this argument is waived. *See Moore v. Comm'r of Soc. Sec.*, 573 Fed.Appx. 540, 543 (6th Cir. 2014)(citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)("'Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'")(citation omitted).

Plaintiff's first claim for relief is without merit for the reasons explained above.

---

[23] "Receives callers at establishment, determines nature of business, and directs callers to destination: Obtains caller's name and arranges for appointment with person called upon. Directs caller to destination and records name, time of call, nature of business, and person called upon. May operate PBX telephone console to receive incoming messages. May type memos, correspondence, reports, and other documents. May work in office of medical practitioner or in other health care facility . . . . May issue visitor's pass when required. May make future appointments and answer inquiries . . . . May perform variety of clerical duties . . . and other duties pertinent to the type of establishment. May collect and distribute mail and messages." *DOT*, 237.367-038.

## 2. Whether the ALJ Erred in "Deferring" to the Opinion of Non-Examining Physicians Over the Opinions of Drs. Turner and Pedigo in Determining Plaintiff's RFC
### (Doc. 13, pp. 9-10)

Plaintiff argues that the ALJ "clearly used a double standard" in assigning weight to the opinions of non-examining physicians over the opinions of Drs. Turner and Pedigo. Plaintiff argues further that the ALJ erred in not providing "sufficient reasons for more closely scrutinizing" the opinions of Drs. Turner and Pedigo. Finally, plaintiff argues that the foregoing violates the Sixth Circuit's decision in *Gayheart*, the relevant portion of which is quoted below:

> Although the ALJ was quite critical of the alleged inconsistencies between Dr. Onady's opinions and other record evidence, his decision does not acknowledge equivalent inconsistencies in the opinions of the consultative doctors. **A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires.**

*Gayheart*, 710 F.3d at 379 (bold added). The excerpt in bold above is the portion of *Gayheart* quoted by plaintiff in her brief.

Plaintiff fails to support this claim of error with any factual allegations. More particularly, plaintiff fails to identify the non-examining physicians to whose opinions the ALJ allegedly deferred over those of Drs. Turner and Pedigo, and why/how the ALJ's decision to do so prejudiced her. Plaintiff fails to explain how this supposed "double standard" was applied/misapplied, and how it resulted in subjecting the opinions of Drs. Turner and Pedigo to more rigorous scrutiny than the unidentified non-examining sources. Plaintiff fails to provide law and argument regarding how the weights derived by applying/misapplying the alleged "double standard" were contrary to *Gayheart*. Finally, plaintiff fails to provide law and argument to show that *Gayheart* applies to Dr. Pedigo, who is a nontreating source.

Plaintiff's argument is conclusory and, for reasons previously explained, it is waived.

Consequently, plaintiff's second claim of error is without merit.

### 3. Whether the ALJ Erred in Failing to Consider
### the Opinion of Dr. Pedigo Properly
### (Doc. 13, p. 10)

Plaintiff argues that "[t]he ALJ erred by failing to discuss the fact that Dr. Pedigo's opinion was consistent with that of Dr. Turner's." Plaintiff argues further that "it [wa]s error to more closely scrutinize the opinions of a treating physician, Dr. Turner, and an examining physician, Dr. Pedigo . . . ." Although plaintiff does not say so specifically, it is apparent from plaintiff's reference to "error to more closely scrutinize" that this claim of error again arises under *Gayheart*.

Plaintiff's reliance on *Gayheart* is misplaced. As noted above, *Gayheart* applies to inconsistencies in opinions, not consistencies. Also as noted above, *Gayheart* applies to scrutinizing the opinions of treating sources more closely than nontreating and nonexamining sources. Dr. Pedigo is a nontreating source. Therefore, the closer scrutiny referred to in *Gayheart* does not apply to Dr. Pedigo. Finally, as noted previously, Dr. Pedigo's opinion was similar to Dr. Turner's medical opinion in some respects but, as noted above, there was one major difference: Dr. Pedigo attributed those limitations that were similar to the fact that plaintiff was pregnant. Dr. Turner, in turn, attributed plaintiff's limitations to her chronic back pain. Relief will not lie in a comparison of apples and oranges.

Plaintiff's third claim of error is without merit.

### 4. Whether the ALJ Erred by Not Including a Function-by-Function
### Assessment in the RFC Analysis
### (Doc. 13, p. 11)

Plaintiff argues that the ALJ did not make a function-by-function assessment in the RFC. Plaintiff also argues that the ALJ "failed to include substantial limitations in the RFC finding correlating to symptoms and limitations which were well-documented in the record.

"'Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing,' as there is a difference 'between what an ALJ must consider and what an ALJ must discuss in a written opinion.'" *Beason v. Comm'r of Soc. Sec.*, 2014 WL 4063380 * 13 (E.D. Tenn. 2014)(citing *Delgado v. Comm'r of Soc. Sec.*, 30 Fed.Appx. 542, 547 (6th Cir. 2002)). More particularly, SSR 96-8p "does not state that the ALJ must discuss each function separately in the narrative of the ALJ's decision." *Beason*, 2014 WL at *13.

A plain reading of the ALJ's decision shows that, although he discussed each of the exertional and non-exertional limitations in his discussion of the various opinions in the record, he did not compare and contrast each of plaintiff's alleged limitations in his RFC narrative. However, the ALJ did note affirmatively in his decision that he had considered "all the evidence"/"the medical record"/ "the entire case record" in reaching his decision. (Doc. 10, pp. 14, 17-19) That was all the ALJ was required to do. This argument is without merit.

As for plaintiff's second argument, plaintiff has failed to identify those "symptoms and limitations" that allegedly are "well-documented in the record" that the ALJ did not consider, and how including those alleged "symptoms and limitations" would have resulted in a different RFC determination and/or a different disability determination. In short, this argument is conclusory and, for reasons previously explained, it is waived.

Plaintiff's fourth claim of error is without merit.

### IV. CONCLUSION
### AND
### RECOMMENDATION

For the reasons explained above, the undersigned **RECOMMENDS** that plaintiff's amended motion for judgment on the administrative record (Doc. 12) be **DENIED**, and the Commissioner's decision **AFFIRMED**. The parties have fourteen (14) days of being served with a copy of this R&R

to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

      **ENTERED** this 13th day of July, 2016.

/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge